Next case called Oral Argument is Baker v. Johnson and Johnson and Canfield v. Johnson and Johnson Good morning. May it please the court? Good morning. My name is Dan Ball and I represent the defendants in this matter. These cases, Baker and Canfield, have been consolidated for this appeal because they present the same issues. These appeals involve the product liability claims of 100 plaintiffs who have filed suit in two cases in St. Clair County alleging various skin disorders because they took a drug called Levaquin. Levaquin is a well-respected prescription antibiotic manufactured by OrthoMcNeil and it's used to treat pneumonia and other serious conditions. The issue in these appeals is whether plaintiffs should be permitted to do an end run around the well-established form of nonconvenience law of this state by lumping together the product liability claims of 98 plaintiffs who have absolutely no connection whatsoever to St. Clair County with the claims of two residents of St. Clair County. The principles and factors that form nonconvenience are well known to this court. The cases are all cited in the briefs of the parties. And I'm not going to repeat those principles, those cases, those principles in detail here today. The key is to talk about how those principles apply to the factual situation we have before us. I think it's important to note one thing right from the outset. There's no dispute that the claims of 98 of these plaintiffs, if they had been brought individually, would have been dismissed or transferred under form nonconvenience principles. So all these cases, if a resident from Virginia, a resident from California, a resident from Florida, if they had attempted to sue in St. Clair County against the defendants, then under the doctrine of form nonconvenience, there's no dispute that those cases individually would have been transferred or dismissed. And the reason I say there's no dispute about that is we raised that point in the trial court. We raised that point in the briefs that we have in this court. And the plaintiffs have never disputed that fact because they can't. They can't do it over the straight face. Plaintiffs do not argue that either the private interest or public interest would be served by having any one of these 98 plaintiffs from 31 different states outside of St. Clair County pursue their cases over in Belleville. The plaintiffs don't make this argument because there's absolutely no legal or factual support. Rather, this is what plaintiffs argue. They argue that St. Clair County somehow, magically, becomes a convenient forum for these out-of-state claims because the plaintiff lawyers combined the claims of two St. Clair County residents with 98 claims of non-residents. They claim that this somehow turns St. Clair County into a convenient forum when it's undisputed that if any one of those 98 people had filed it individually, it wouldn't have been a convenient forum. That cannot possibly be the law in Illinois. It can't be. Think about the absurdity of that position. The case of Vivian Brown from Florida, for example, she's one of the 98. If she'd sued alone, the case would have been dismissed with instruction that they could refile it in Florida. But since she joined the suit with Jessica Kent from Belleville, a Belleville resident, plaintiffs claim that now that case should be allowed to proceed along with the 98 plaintiffs. Again, that cannot possibly be the law. As we set forth in our brief, the tactic used in this case has been used on multiple occasions by this counsel from Illinois and their co-counsel, law firms from Louisiana and Texas. It's been used by a couple of other law firms as well. Another appeal on this issue is pending in this court. The court has accepted a petition for leave to appeal on the Wilson case against Ortho McNeil, which is a similar fact situation. In addition, this firm that was involved in this appeal, this plaintiff's firm, as well as their co-counsel firms from Louisiana and Texas, recently filed a case against another pharmaceutical company I represent with 85 plaintiffs from all around the country and one resident of St. Clair County. The judges in Madison County have not permitted this type of ignoring of form non-convenience rules. We cited a number of state court opinions from Madison County where they've lumped, in those cases they've lumped a bunch of people from all over Illinois in one case, and the judges there said they, under intrastate form non-convenience, they need to be transferred to appropriate forms. It's kind of unusual for a defense counsel to cite Madison County cases, but anyway, go ahead. Well, it is. Actually, the judges there did the right thing. Are you saying that the judges, that the decisions of certain judges in Madison County who are fine judges are precedential to this court? No, I just think it's, Your Honor, I think it's just showing how other judges have addressed this same issue. We're alerting the court that this issue has appeared in other counties and how they've addressed it contrary to how Judge Gleeson addressed it. So it's a notice function. Pardon me? It's a notice function, basically. I think it's bringing it to the court, Your Honor's attention as to how other counties have handled it. I agree that what Madison County does is not necessarily precedential of what St. Clair County does, but I thought it would be interesting and it was something that we footnoted in our briefs. We couldn't find any reported appellate court decision in Illinois permitting the kind of procedural maneuver that's occurred in this case. We believe this is an important case. This case gives the court, once and for all, the opportunity to stop what we consider to be an abuse of the system. I'm going to talk about the private interests and public interests that are important to any form of nonconvenient analysis, but I want to, before that, address one issue that was raised by plaintiffs in their brief, and that relates to the issue of severance. This appeal is not about the denial of our motion to sever. We believe Judge Gleeson misapplied the law. We asked him to certify that question so the law was clear. He declined to do so. And we have not appealed that issue. Rather, we've appealed the form nonconvenience issue. We believe this court has the power and must remand these cases to St. Clair County with instructions to have the cases transferred to the appropriate county in Illinois, if they're Illinois residents, there's a few Illinois residents among the 98, and otherwise dismiss them under the form nonconvenience rule to be refiled in an appropriate forum. That's what we're asking for in this appeal. So now let's talk about the private interests in this case. The facts are not in dispute. Unlike other form nonconvenience cases, where the plaintiffs are able to point to something that is a connection with the venue at issue, the plaintiffs here, and you can read their briefs, I've read them, I'm sure you all have read them, they point to absolutely no evidence that's located in or related to St. Clair County except for those two St. Clair County residents. With respect to the other 98 people, they don't even point to anything in Illinois, any evidence that exists in Illinois, let alone St. Clair County. There's no witnesses, no documents, no offices of the defendants, no employees of the defendants, no registered agent, no experts, no nothing. Unlike the cases cited by plaintiff in attempting to defend the decision below, those cases had some connection to St. Clair County. It was debatable whether that was sufficient of public interest and private interest for Wade, but there's nothing here, nothing, that connects these 98 plaintiffs to St. Clair County. In addition, these are product liability cases in which the primary allegation is failure to warn. And the private interests of the litigants, particularly the private interests of the defendants, are very much affected in this type of case by the availability of a prescribing doctor and a treating doctor to testify live at trial. The critical issue in a case of this nature is, what did the prescribing doctor know about the risk connected with the medication? What did he take into account? Why did he make his decision? How did he do the risk-benefit analysis in prescribing the drug? The critical factor on causation from the treating doctor is, did this drug cause the problem? Did something else cause the problem? What were pre-existing conditions? You cannot try one of these cases without testimony from the prescribing doctor and the treating doctor. And when the doctors are in Virginia or California or Florida or who knows where in these 31 states, it's implausible to have them appear live at trial. And that is that the availability of live witnesses at trial, particularly critical live witnesses, has been discussed in numerous cases as being a significant factor in a form of non-convenience analysis. If these cases are allowed to proceed in St. Clair County, that robs us and frankly robs the plaintiff of the opportunity to bring in these very, very important live witnesses. The cases talk in terms of factors, convenience of the parties, access to evidence, practical problems at trial. All of these factors of private interest weigh in favor of these cases proceeding where the plaintiffs and their doctors reside. None of those factors, none, for these 98 plaintiffs point to St. Clair County. The private interest issue here, this private interest issue, particularly about the availability of these prescribing doctor and treating doctor, it overwhelms every other issue in this case. Other than the fact that one of the three law firms representing the plaintiff has an office in Belleville, plaintiffs in our reading of their briefs have presented no argument how their private interests of these out-of-state plaintiffs are enhanced by the case proceeding in St. Clair County. I can't fathom how their private interests are enhanced. And I actually challenge Mr. Guido, Plaintiff's Counsel, to explain how the private interests are enhanced in this situation. Likewise, turning to public interests, no public interest weighs in favor of allowing the claims of these 98 plaintiffs to proceed in St. Clair County. Why should the residents of St. Clair County have to sit through, either individually or collectively, months and months of trial related to plaintiffs from 32 different states? Why does St. Clair County have a public interest in deciding the personal injury claim of a person from California or Florida? There is no showing that these cases represent some type of issue of national importance. In fact, except for the two cases brought by these law firms in St. Clair County, there's only a couple of other pending cases anywhere else in the United States with these same kind of allegations about this drug. Skin disorders related to Lebanon. So there is no issue of national importance we're dealing with here. Also, why should Illinois courts have to apply the product liability laws of 32 states? And they are different. They are different. How is that in the public interest? Again, I ask Plaintiff's Counsel to explain to you how the public interest is served by allowing these 98 plaintiffs from all over the country to proceed in St. Clair County. In summary, we submit that a resident of a county or a district in California should have his or her case decided by fellow residents of that county or district. He or she should have his case decided  That's what's best, most convenient in the private interest of the defendants. And quite frankly, we believe that's what's best and most convenient for the plaintiffs. And it's certainly what's best and most convenient for the citizens of St. Clair County. Plaintiffs struggle to argue that form non-convenient principles justify what they've done. And they cite cases and try to talk about that. And essentially their argument is this. They say, well now, we've got 100 plaintiffs in one case or two cases and there is no single convenient form. That's why they should stay in St. Clair County, because there's no single convenient form. Again, I think that argument strains credibility. Again, plaintiffs do not dispute that any one of these cases if brought individually would have to go someplace else. Stand up and make the argument that because they joined them all, all of a sudden St. Clair County has become a convenient form. And again, that cannot possibly be the law of Illinois. It just can't be. In conclusion, we urge this court not to condone what's happened here. We urge this court to put a stop to the practice of these law firms and a few others who do the same thing. We urge this court not to condone this total disregard of the long-established principles of form nonconvenient law under Illinois law. Most importantly, we urge this court to consider why this appeal is so important. If this conduct is permitted, this court will be giving a green light to law firms around the country to bring all of their cases to St. Clair County. That would be the wrong result for the citizens of this state. It would be the wrong result for the court system of this state. And it would be the wrong result for all the individuals and companies who rely on this court system. We urge this court here and now to put an end to this practice. I haven't used up all my time, but if anyone has any questions, I would be happy to answer them. Otherwise, I said what I came to say, and I appreciate your attention. I don't believe we do. Thank you, Counsel. Thank you very much. Counsel? Good morning. May it please the court? My name is Christopher Quito. I am here today to ask you to affirm the decision of the trial court which denied Johnson & Johnson's motion to sever and motion to form convenience. I apologize for the loss. Thank you very much. I'll be certain to hold you to that line. Absolutely. I did a poor job of defending this case of the brief from this point. You can't understand this case without understanding the joinder statute. Because the joinder statute, 735 ILCS 5-2-404, entitled Joinder of Plaintiffs, supports exactly what's done here. That statute states, all persons may join in one action as plaintiffs. It doesn't say all persons from Illinois. It doesn't say all persons from St. Clair County. The text of the statute. Remembering Justice Frankfurter's old line that when you're construing the statute, the three most important things are the text of the statute, the text of the statute, the text of the statute. All persons may join in one action as plaintiffs, in whom any right to relief in respect of or arising out of the same transaction or series of transactions is alleged to exist, whether jointly, separately, or in the alternative. Whenever, if those persons had brought separate actions, any common question of law or fact would arise. Mr. Ball went on and on about having to get filed separately. Again, I think Johnson & Johnson misses the point of the Joinder statute. The Joinder statute says that you could have filed cases separately. But an option available under our law, and by the way, this is pretty much equal to Rule 20 of the Senate. It's virtually identical. But if there is a common question of law or fact, and I know that looks a lot, that's in fact the identical statute for class actions, even though this is not a class action. If those exist, this is a complex pharmaceutical case against Johnson & Johnson, which alleges their warning was inadequate. These are almost all warnings cases. And so, as Judge Gleeson found, the common question of law or fact, which arises here, or the fact that they arise out of the same transaction, is the defendant's, and I'm reading from what the trial court held, the defendant's wrongful conduct was universal in the developing, researching, studying, testing, manufacturing, promoting, marketing, and selling its drug, lenopine, and antibiotic to the plants. Counsel, wasn't there a case in the second dictate, medical versus all states? It's 352 L.A. 3rd, 239. Did you ever read that case? I apologize, Your Honor, I'm not familiar with that case. It was cited in the briefs, and I missed it. The defendant said that you could not do this. I don't recall reading that in Johnson & Johnson's brief. It was 2004. 352 L.A. 3rd, 239. In the second dictate. I apologize, Justice Palmer, I'm not familiar with that case, and I don't believe Counsel John, maybe I'm mistaken, but I don't believe Johnson & Johnson cited that case either. You know, I didn't interrupt you. I was going to do it a couple of times, especially when you talk about all these other cases that we've all filed, none of which is in the record. You're talking about it, all right? So if they did, I apologize. But I'm not familiar with that. But if it came from the second district, then again, I don't know that it's necessarily binding authority on this court. And again, to continue on with the joinder of the statutes, if upon the application of any party it shall appear the joinder may embarrass or delay the trial of the action, or enter into separate trials, or enter any other order that may be expedient. So I think the joinder statute very candidly anticipates all these myriad problems that very able opposing counsel has said exist here. There can be exemplar trials. There can be trials which arise under one state of the law or anything else. This is a very, it's not an unusual feature in complex litigation to see these kind of joinder issues come up. And if you do that, and you understand where the joinder statute fits in here, I think that the approach done here is entirely consistent with the Civil Practice Act. You agree that each of the plaintiffs has a separate cause of action that's entitled to separate consideration by a trier. In fact, we always instruct juries of that. I do, Your Honor. And as you just read, they could have separate trials and so forth and so on. Why wouldn't we separately determine the foreign nonconvenience issue as to each plaintiff's case? Because I think that these, the fact that you could join them together, because again, so many of the issues are common as to how the warning was formulated and how it was communicating to the prescribing community. I mean, there is a word in the media about that. I know that. So I don't think that you can apply it to each case because the joinder statute anticipates that you handle these things, in my opinion, with exemplar trials and other things like that, to handle what are, you're right, Justice Stewart, there's going to be individual issues for each plaintiff. But should each plaintiff have to call the same experts with regard to Johnson & Johnson or their own experts with regard to the warnings and how they were formulated and how they were changed over the years? And I think the trial court is more than willing and able to handle that. In the world we live in, it just can. And you can do exemplar trials if need be. And that's the way these things are typically done, typically handled in courts all over the country. Again, joinder statute is what I think cements the case. And when you go through the private interest and the public interest factors then under a more traditional forum analysis, you know, the touch mark of the private interest factors are convenience. The relative ease of access, testimonial, documentary, and real evidence, and all of the practical problems that make the trial of a case easy, expeditious, and inexpensive. I think when you apply those to here, it supports a single forum for the case. We've, with Mr. Ball, his client has probably given us, I think, more than a million pages of discovery. We continue to litigate the cases. Actually, for the St. Clair County plaintiffs, they're not even challenged in the forum on those anyway. We have exchanged plaintiff fact sheets with them. These cases, when you look at what convenience really is in the real world, it's absolutely as convenient to do it here as anywhere else. The one thing that he seizes upon, and I'll grant you there's some support in the cases for this, is this notion of live doctor testimony. But in the real world, I've been practicing law since 1986 as an officer of the court. In any case I've tried, I've seen a doctor testify live. In the real world, they're done by video evidence, depositions. For the understandable reason you can't have a doctor, we all know what trial schedules are like, you expect to put on a witness in the afternoon, it goes over to the next day, and you can't have doctors just sitting in the hall waiting to be called. A video evidence deposition is certainly appropriate to do those things. And this gets into, too, as well, even though there is language in the case that says that's an important factor, I think a lot of times the cases necessarily can be reconciled. They're very fact specific. I think, Justice Fulmer, one of the most recent cases you were the authoring opinion on talked about that, how fast it settled that case. Pardon me? You almost settled that case? We settled the gadolinium cases, Your Honor, that were up here before. But yeah, and the deputal cases, which are different, they're all in front of Judge Murphy in federal court. But these cases are so fact specific that they're directed to the discretion of the trial court. And that's why necessarily sometimes you can't see the cases reconciled. In order for this court to rule in favor of Johnson & Johnson, it has to determine not just that the trial court was wrong or was mistaken, but that it abused its discretion. That in the exercise of its thoughtful discretion, that no reasonable person would do what the trial court here did. And I think under an abusive discretion standard that the defendants haven't met their burden, their heavy burden, to show that these cases should be severed, even though they don't ask for that relief, but that's really what they're looking for, is a severance and then a transfer. The same way with the public interest factors, it seems to me that when you can bring a case within the confines of the Civil Practice Act, then almost by definition, the public interest factors, that there is a public interest factor in hearing the cases where the plaintiff's chosen form exists. Judge Gleason and every other judge will plainly tell you that there's no congestion in Sinclair County. That's in the record as well in this case that would prevent these things from expediently moving forward. Failing that, I'd be happy to answer any questions, should there be any, but other than that, I would stand on what's in the brief. I mean, doesn't it really boil down to whether we, on a forum non-convenience analysis, whether we examine each plaintiff's claim separately or the combination of the plaintiffs that you've joined together? I mean, you know, your argument is all based upon an analysis of looking at all of them together. In other words, you say there's no other forum that's more convenient for everybody, okay? Defendants say, no, that's not what you do. You look at each individual plaintiff. I mean, that's what it boils down to isn't it? Sure. And I think you do that there with several cases. I don't think, because again... Well, the practical effect of it certainly would be a severance, you know. Right, right. But I don't even think that's before the court. The severance motion is before the court under 306. And again, the joiner says that they can file in one action. In one action is the text of the statute. You're right. Now, if they're able to sever, then that is a different thing. Even though there are two, I grant you that the factors probably cut against me, but even there are two. All of these liability, if you will, issues with respect to the warning and how it was formulated and how it was communicated would still exist with those. But after severance, I don't think that they can get away with what is a proper joiner. Let me ask another question. Mr. Ball, I'm sorry. No, go ahead. Mr. Ball said it's undisputed that if any of these out-of-state plaintiffs had filed separately, that we'd have to kick them to another state under Form 9 Convenience. Do you dispute that? I'll give you an opportunity to... You know, I've never analyzed the case from that standpoint. It's quite possible that it's true. It's quite possible that there would be other impediments to filing them individually. But again, I think, really, that's like saying that if I had filed something different, if I hadn't relied upon the very text of the statute which allows this procedure to occur, then we'd be dealing with something differently. And, you know, it would be a different case. I'm willing to concede that. I don't know that necessarily... Yeah, when Mr. Ball raised that question, I think it's a bit of a red herring because it's not what's before the court here. So I don't know that I can necessarily answer it. I hope I'm not... No. This is... Excuse me. The case is as it's filed. This is essentially an indiscretionary weighing of the public and private interest factors underlying enforcement and all the other form cases. I mean, that's basically the way your argument and your brief approach this matter, I gather. Yes, Judge. Justice Goldberg. And so the severance really isn't in front of us. No, it isn't. But I don't think the cases can be... I don't think that what is before you can be understood without that issue. And that's why this case really is a bit of first impression. You know, I mean, not only are all cases so fact-specific anyway, but I don't think there's ever been one that's been the joint issues here. The case that I was thinking about that I expected to hear was a venue case, candidly, that was decided in a way I was hoping it would distinguish, but that was said that all the plaintiffs have to... if you're rising under the transaction prompt, they all have to set aside. That was... was... was Justice Chapman's father that argued that. They had a better plaintiff's counsel in that particular case. But... but you're right, Justice Goldkirchner, what we're relying upon is the fact that these can be joined in one action, and these issues of common question of law or fact, which are so prevailing here for each one of them, does mean that you have to, I think, have to decide the cases as they're fought. Now, if they're severed, it is a different case. Thank you very much. Thank you, Counsel. Counsel? As Mr. Quito admitted, all this discussion about the Joinders statute is important here, not in his briefs anyway. Okay? And there is no Illinois case that says the Joinders statute somehow trumps foreign non-convenience law. It's not there. My reading of... in your briefs, and listening to both of you in the case, that the proper or improper Joinders may be a factor. No one, I think, is arguing that it trumps them. Well, that's the way I just heard Mr. Quito arguing it, that he was talking about things like common issues between the plaintiffs and the fact that there's same kind of conduct. Those aren't... those are not factors under a form of foreign non-convenience analysis. Whether there's similar conduct across all the plaintiffs, that's not in there, anywhere, in any of the cases that have been decided by this court or other courts on foreign non-convenience. He, Mr. Quito, spent most of his argument talking about the Joinders statute and the propriety of Joinders and why that's important and that type of thing, but that has nothing to do with the foreign non-convenience analysis here. Let me cite the court to two cases that I think are important here. One is the Medical Alliance case that just former brought up that is in our brief and in that case, it involved some... a claim against Allstate for... in which the... the underlying facts were in five different states and under a foreign non-convenience analysis, the court there, the substantive district back in 2004, said, no, you've got to bring these cases and where those five different events occurred and where the witnesses are and that type of thing. Are you... are you taking the position that there is no commonality of facts in this case? Well, certainly there's some commonality of facts, but that is the application of the Joinders statute and it goes to the severance issue. It's irrelevant, in our view, to the foreign non-convenience analysis. It's irrelevant. That is our point. Okay. And, you know, we do not believe the Joinders statute was properly applied by the judge. We argue that because there's two factors. They have to be common facts and, and, they have to arise from the same transaction. And... Or series of transactions. Or series of transactions. And there's no Illinois case saying that that Mrs. Brown's prescription down in Florida and Mrs. Smith's prescription in California and their treatment is the same transaction. There's no case... That's the argument we made. The judge rejected it. We tried to get it certified. He wouldn't certify it, so we didn't appeal it. Not here. Not here. Your argument here is that all of the... Each of the plaintiff's claims in these two cases arose out of totally separate transactions. Yes, sir. In other words, if we'd had a bus coming through southern Illinois with people from 32 states on it and it ran off a cliff, you wouldn't be making this argument if they were all joined in the same place. They wouldn't... I believe the cases most likely would be wherever that county was that the bus ran off the cliff. That's where they should be. That would be a... They would have an interest in that litigation. We don't have that here except for the two named plaintiffs. The other case that I think is instructive is not a form nonconvenience case. It's a venue case. But it's similar in that it's the Peterson v. Monsanto case from the 1980s in which 32 plaintiffs... I believe, Judge Goldenhersey, it was your case at the trial court level in which 32 plaintiffs were joined in one case and the court went through... This court went through the analysis and said 27 of them don't have any connection with St. Clair County. So those 27, it was remanded back to the court in St. Clair County for dispersal to where they belong where the five that did have connections stayed. And that plus the Medical Alliance case are perfect authority for what we're claiming should be done here. I will have to say, quite frankly, that Mr. Quito brought up live testimony and everybody's by video. That's not my experience. I've had a lot of live doctors. A lot of live doctors in cases. And, in fact, the most recent pharmaceutical trial I did a few years ago in Madison County, a Vioxx case for Merck. The key witness in that case, I believe, from the jury's standpoint and our standpoint and the plaintiff's standpoint, was the doctor who prescribed Vioxx and treated the woman for her conditions. And that doctor being live was a heck of a lot... He was a Madison County resident and that doctor being live was a heck of a lot different than somebody doing a video deposition months before a trial. I think it was a critical factor in the case. Abusive discretion standard. We agree that's the standard. I don't see, with all due respect to Judge Gleeson, I do not see how a reasonable person could say that you can take 98 plaintiffs whose cases don't belong in St. Clair County, undisputed they don't belong in St. Clair County, I didn't hear, you asked the question and I didn't hear any disagreement with that, and then all of a sudden St. Clair County becomes a convenient forum when you lump them all together. That's not the analysis. Thank you very much for your attention. Thank you, counsel. Thank you, both counsel, for your briefs and arguments. We'll take the case under advisement. The quote will be in the short list.